## JOHN H. HEWES vs. JAMES C. MUSICK.

Where an answer is responsive to the allegations in the bill, it must stand as proof of the facts stated in it, until contradicted by two witnesses, or by one witness and strong corroborating circumstances.

### APPEAL FROM ST. LOUIS CIRCUIT COURT.

#### STATEMENT OF THE CASE.

The plaintiff in error was also complainant in the court below, and filed his bill alleging in substance, that one Amos Lovering in May, 1845, conveyed to complainant a valuable tract of land in St. Louis county, containing over 600 acres. That in June, 1843, Lovering being then the owner of the lands, conveyed the same to John C. Rust and A. Meir, in trust to secure to Jacob Flousch, the payment of two promissory notes of Lovering, each for the sum of $175, payable 6 and 12 months from date. That these notes, together with the deed of trust, were assigned by Flousch to the defendant Musick, who agreed with Lovering to wait 60 days for the money from the date of the transfer to Musick. That Lovering having failed to pay the money within 60 days, Musick caused the land to be advertised for sale under the trust deed, fraudulently representing to Lovering that his only object in selling the land was to place the title in Musick, so that he could borrow upon the land as much as Lovering owed him. That he knew where he could borrow the money on the land, and if Lovering would allow him to buy it in at the trust sale, he would permit Lovering to redeem it at his convenience, and pledged himself to take no advantage of Lovering, from having the legal title in him. That Musick, at the time, deliberately intended to perpetrate a fraud by purchasing in the lands for a trifle, and then refusing to permit the redemption. That Lovering fell into the snare, and

permitted the land to be sold, relying on Musick's promise to allow him to redeem. That the sale accordingly took place on 22d February, 1845, at 3 o'clock in the afternoon. That relying upon his right to redeem, Lovering made no effort to raise the money, and the whole tract was struck off to Musick for $200. That neither Musick nor Lovering was present at the sale, and the land was bid in for Musick by the auctioneer at $200, which was the only bid made. That no one was present at the sale but one of the trustees and the auctioneer, and that Musick had instructed the auctioneer to bid in the land for him. That the land was worth at least $4000. That the sale was made at an unusual hour, and on a day generally kept as a holiday. That the advertisement was not in conformity to the trust deed. That it described the debt as due to the trustees, and not Flousch or Musick, whose names do not appear in the advertisement at all; that it wrongly describes the land, and that the advertisement is vague, uncertain, and not intelligible, and in no respect such as the deed required. That on the day of sale Lovering came to the city to look after his interest, but met Musick in the afternoon by whom he was assured that he need not attend the sale, that he, Musick, would buy in the land, and pledged himself in the most solemn manner that Lovering might redeem it. That Musick, after the sale caused the trustees to convey it to him, notwithstanding he had promised Lovering that no conveyance should be made until the terms of redemption were more explicitly agreed upon. That after the sale, Musick never denied Lovering's right to redeem, but on the contrary always admitted it, until about the time that Lovering was about to convey the land to the complainant, when Lovering and complainant called upon Musick, and offered to redeem by paying the entire debt and interest due to Musick, with all costs, and a suitable compensation for his trouble, when for the first time, Musick denied Lovering's right to redeem, and claimed the land as his own.

The complainant avers that he is ready and willing to pay Musick all that is due to him, and prays that the deed to Musick be held to be fraudulent, and that the same be set aside and complainant permitted to redeem. Musick, in his answer, admits the sale to complainant, but requires the production of the deed. He admits also the execution of the deed of trust, and the notes to Flousch, and the assignment from F'ousch to himself; also the sale under the trust deed, and the purchase of the land by him at the trust sale, and the conveyance from the trustees to him. But he denies expressly that before or at the time of the sale, there was any agreement for redemption, or that he purchased the land with any such understanding. He admits, however, that after the sale, he voluntarily agreed with Lovering that if he would pay the debt, interests and costs, within 45 days, he would relinquish the title acquired by him at the sale. That at the time of the sale he did not want the land, but only to get the money due to him. That he told Bell, the auctioneer, to bid in the land for him, unless some one else bid more than the debt and costs, but not to bid in the land for him at more than the debts and costs. That Lovering failed to redeem within the 45 days, and he then concluded to keep the land himself; admits that afterwards that complainant and Lovering called upon him and offered to redeem, and that he refused to permit them to do so, but denies that they actually tendered the money; admits that he purchased the land for $200; denies that he agreed that the trustees should not convey until he and Lovering had agreed upon terms for the redemption.

Says that Col. Chambers claimed the whole tract, and that the title to one-sixth was outstanding in one of the heirs of Hart, the original grantee; that Lovering had offered to sell the choice parts of the tract at $5 per acre, without being able to effect sales at that price, but does not otherwise deny that the tract was worth $4000 at the date of the sale. Lovering and the trustees were also made defendants. Lovering answered, setting out the facts in substance as they are stated in the bill. The trustees failed to answer, and the bill was taken as confessed against them. In the progress of the cause, the complainant, by an amended bill, charged that Musick and others, under his authority, were committing waste upon the premises, and obtained an injunction to restrain waste. But as this proceeding does not touch the merits of the case, it need not be further noticed.

Upon the final hearing, the court dismissed the complainant's bill with costs. Complainant filed his motion for a rehearing which was overruled, and he has appealed to this court.

In the progress of the cause, the complainant obtained leave to take the deposition of the defendant Lovering, (see page 49 and 50 of the transcript) subject to all legal exceptions. The deposition was taken, and fully sustains all the material allegations of the bill. The complainant claims to have fully established in proof all the allegations of the bill touching the agreement for redemption, the subsequent offer to redeem, the refusal by Musick, the inade-quacy of the price, the suspicious circumstances attending the sale, &c. (See the depositions of Lovering and (Peterson, page 69 and 74) the testimony of Belt, page 52, and Dogget, page 55.) The defendant contends that the proof sustains the answer and refutes the bill. See reports of testimony, page 51. The defendant introduced testimony with a view to impeach the credibility of Lovering and Peterson. See deposition of Chambers and testimony of Blair and Whitesides. The complainant then introduced evidence in rebuttal in support of their credibility. See testimony of Flagg, Tiffany, Henley, Fisher, Thornburg, Templeton and Morrow.

## CROCKETT for plaintiff.

1st. That the sale to Musick was void. 1st. Because the advertisement does not describe the debt as due to Musick, but to the trustees. 2nd. Because it does not properly and truly describe the land. 3rd. Because it is vague, uncertain and confused, and contains no intelligible description of the debt, the parties or the property to be sold. The rule in such cases is that the trustee must strictly pursue the terms of the deed as to time, terms and mode of sale. 4 Alabama R. 483; 1 Peters R. 145; 4 Porter's (Alabama) R. 330; 1 Mo. R. 520; 10 Mo. R. 75.

2nd. That according to the weight of testimony in the cause, Musick obtained an unconscious and fraudulent advantage over Lovering, by holding out to him the delusive idea that he might redeem the land. He assured Lovering before the sale, that he would take no advantage of him; that he would purchase in the land and allow Lovering to redeem it. See deposition of Lovering and of Peterson, and Musick's letter to Lovering, page 47, of record.

3rd. That the sale to Musick may fairly be presumed to be fraudulent, and a court of equity will so regard it; because, 1st, of the gross inadequacy of the price. None of the witnesses value the land at less than $3000. Musick purchased it for $200. 2nd. The time and manner of the sale, at a late hour in the afternoon, no bidders being present, except an occasional passenger along the street, Musick himself not being present, nor Lovering, and there being but one bid made, and that by the auctioneer on behalf of Musick, are all circumstances of strong suspicion against the fairness of the transaction. Tirman vs. Wilson, 6 John. Ch. R. 416; 4 Cranch, 403, 18 John. R. 362; 3 Blackford's R. 376; 6 Wend. 522.

4th. Upon the whole proof, it must be conceded that before and at the time of the sale, it was agreed between Lovering and Musick, that *some* time should be allowed for redemption. If so, and if Lovering failed to redeem within the time stipulated, nevertheless a court of equity will not regard time as of the essence of the contract, but will treat it as in the nature of a penalty, and permit the redemption within any reasonable time. Watts vs. Watts, 11 Mo. R. 547; 1 Fonblanque Eq. 395, 6, 7, 151; Gower vs. Saltmarsh, 11 Mo. R. 271; 1 Maddox Chy. 28, 30-1-2; 2 Munford R. 71; 5 Munford R. 495; Hepbeme vs. Auld, 5 Cranch, 262; 6 Munford R. 78, 79; Brazier vs Graty, 6 Wheat. 207; 2 Pierre Williams, 66; Getchell vs. Jewett, 4 Greenlf. 350; 1 Pow. Mortz. 379, a; Leggett vs. Edwards, Hopk. 530; 2d 391, a n ee; Dumond vs. Sharts, 2 Paize, 182; Longworth vs. Taylor, 1 McLean, 395; Fletcher vs. Wilson, Sneides and Marshall Chy. R. 376.

5th. That although the general rule is that mere inadequacy of price, except in a very gross case, would not of itself be sufficient to set aside a sale; yet if it be connected with other cir-

cumstances, which show that the party was so oppressed that he was willing to submit to very hard terms, this will show a command over him, which amounts to fraud. In this case the price was so grossly inadequate as to render the transaction fraudulent on its face and connected with the other facts, establishes a clear case of fraud and oppression, against which the court should relieve.  Holmes vs. Fresh, 9 Mo. R. 201.


SPALDING for defendant.


Upon a purchase and deed at sheriffs or other sale, an after agreement that the execution debtor may *redeem* or re-purchase within a specified time, is a *conditional sale*, and not in nature of a mortgage *;* and if the time expires without redemption, there is no equity remaining, and the right of redemption is gone.  4 Marsh. Rep. 47, 54; 7 Cranch. 218; 3 J. J. Marshall, 355; 4 Miss. Rep. 412, 13, 14, 15; Coote on Mortgages, 38, 39, (16 law libr. 17;) 2 Edwards Chy. Rep. 138, affirmed, 6 Paige, 480.  The case 7 Miss. Rep. 327, was not like this.  There the deed was, *on its face*, doubtful whether mortgage or not.  Here, the deed is absolute, and the presumption is *against* the existence of any right to redeem; and burden is on complainant *to show it against the face and shape* of the instrument.

9 Miss. Rep. 201.  That understanding of one of the parties does not make an absolute deed a mortgage.

2nd. Inadequacy of price is not ground of redemption in this case.  1 Story's Equity, sec. 244, 245; 9 Miss. Rep. 201.

3rd. There is no deficiency or irregularity in the advertisement of the sale under the trust deed such as makes the sale void or the land redeemable.  10 Miss. Rep. 77, Stine vs. Wilkson.

In the present case the advertisement was published tri-weekly and daily, in the same paper, during the whole time; and it was a country property.  4 Porter, 321, Wiswall vs. Ross, that advertisement under deed of trust need not specify the amount of the debt.


RYLAND, Judge, delivered the opinion of the court.

From the above statement it will be seen that both complainant and defendants contend, that the facts in testimony support each one's own side of this controversy.  It becomes the duty of this court, therefore, to look carefully into the evidence and to determine for which side, the same preponderates.

I shall not take any notice of the insufficiency of the advertisements : it was very awkwardly drawn up : for a considerable portion of the deed of trust, was copied into it and published : which might well have been left out.  I am not willing to reverse the decree of the court below by reason of any superfluous matter in the advertisement.  It contains enough to give notice of what was going to be done in the premises, and indeed it appears from the evidence that it was known in the neighborhood in which the land was situated, that the same was to be sold, and that the day and place were known, previous to the sale's taking place .

The answer of Musick is responsive to material facts alledged in the bill. This answer denies all fraudulent representations on his part, to procure any advantage of Lovering.

It shows a desire to indulge Lovering, and also an indisposition on the part of Musick to purchase the land.

It was natural for Musick to wish to make his debt and I am induced to think from all the evidence in the case that there was nothing wrong, nothing fraudulent or unfair in the means taken to enforce the payment of this money. The land was sold at the court house door in the city of St. Louis, on 22nd day of February, and was sold within the hours fixed by law for sales of real estate under execution. True it is, that the account given by Lovering of this transaction and of Musick's promises, and representations to him, does not agree with Musick's statement; and if Musick and Lovering must, the one or the other, be considered by me as the less worthy of credence, I must be candid and assign to Mr. Lovering that unenviable position.

Mr. Belt, the auctioneer, and witness in this case, satisfies me, of the correctness of Musick's answer. He states, that Musick gave him instructions, not to bid off the land to him if any other person would bid for it, the amount of his debt. This proves Musick's assertion, that he did not want the land, that all he wanted was his money.

We find Musick after the sale and purchase of the land by him, still giving time to Lovering to redeem the land, by paying the debt and interest.

Lovering still neglects or is still unable to redeem it, and Musick at length determines to hold the land and have nothing more to do with Lovering about it. There is nothing illegal or inequitable in this. He surely was not bound to extend this indulgence unlimitedly—or until Lovering should wish it no longer. I deem it unnecessary to recite the evidence in this case. Some of the witnesses for the complainant appear under a shade upon their credibility; and I am unwilling to overthrow the answer of the defendant, Musick, by any such testimony.

After an examination therefore of all the facts in proof in this case, I can find nothing requiring this court to disturb the decree of the court below.

My brother judges concurring herein, the decree of the circuit court, dismissing the complainant's bill, is affirmed with costs.